UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EVANTIGROUP, LLC, | ) |
| Plaintiff, | ) |
| vs. | ) No. 4:11-CV-1328 (CEJ) |
| MANGIA MOBILE, LLC, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff's motion for a preliminary injunction. Defendant opposes the motion. A hearing was held on September 2, 2011, and the issues have been fully briefed.

## I. Background

The plaintiff initiated this action in the Circuit Court for the City of St. Louis seeking damages and injunctive relief based on state and federal claims of trademark infringement and unfair competition. See Mo.Rev.Stat. § 417.061 and 15 U.S.C. § 1125(a). After the case was removed to this Court, plaintiff filed the instant motion for a preliminary injunction.

Plaintiff owns and operates "Mangia Italiano," a sit-down restaurant located in the Tower Grove neighborhood in the City of St. Louis. Defendant owns and operates "Mangia Mobile," a food truck that does business at various locations in the City of St. Louis. They are the only restaurants in the St. Louis area whose name contains the word "Mangia."[1] Both establishments sell prepared Italian food, however there are

---

[1] "Mangia" is the Italian word for "eat."

significant differences in their menus.  Indeed, toasted ravioli is the only menu item the two establishments appear to have in common.  The Mangia Mobile menu is quite limited and consists of sandwiches, toasted ravioli, and Arancini (deep-fried riceballs with meat and cheese).  Its food prices range from $3.50 to $7.00.  The Mangia Italiano menu is more extensive, offering sandwiches, salads, pizza and pasta entrees.  Its food prices range from $4.00 to $20.00.

Mangia Italiano opened its doors in 1983 and became locally known for the fresh pastas and pasta sauces that were made from scratch on site.  In its early days, Mangia Italiano was featured in numerous newspaper articles, in part due to the celebrity of its first owner who became known as the "Pasta Doctor."  The original owners of the Mangia Italiano establishment eventually expanded into wholesale distribution of fresh pastas and sauces under the Mangia Italiano name.  In 2001, David Burmeister purchased the Mangia Italiano restaurant and pasta manufacturing business.  Burmeister, through his company Mangia Pasta, LLC, operated both the restaurant and the pasta manufacturing businesses.  Burmeister made substantial investments in business, including doubling the size of the restaurant and building a new manufacturing facility.  When Burmeister sold Mangia Italiano to plaintiff in 2011, the Mangia Italiano mark and the goodwill associated with it factored significantly in the sales price.[2]  Plaintiff purchased all rights[3] to the Mangia Italiano name, but executed a license and supply agreement with Noodle Farm, LLC (Mangia Pasta's

---

[2]The sale of the restaurant was finalized in February 2011.

[3]The parties dispute whether Burmeister explicitly purchased the rights to the Mangia Italiano name as part of the 2001 purchase.  However, they have stipulated that Burmeister operated the restaurant and pasta-making businesses under the Mangia Italiano name from 2001 until plaintiff's purchase of the restaurant in 2010.

successor in interest) to allow Noodle Farm to continue manufacturing pasta products under the Mangia Italiano brand.

Today, fresh pastas and pasta sauces sold under the Mangia Italiano name have been featured at approximately twenty-five St. Louis area restaurants and are also sold at several high-end grocery stores.  In recent years, the Mangia Italiano restaurant has received accolades from local publications in the form of best-in-city awards and critic and consumer reviews.  It has succeeded in attracting well-known and experienced local chefs.  The restaurant employs approximately 40 people; it is open every day, serving lunch and dinner.  In addition to restaurant service, Mangia Italiano features a late-night bar and live-music entertainment.

The Mangia Italiano logo is rectangular and is divided into three blocks colored green, white and red in the style of the Italian flag.  In the center (white) block is a drawing of a Roman-style column with the letter "M" superimposed on it.  The word "MANGIA" is printed in an arc design above the "flag" and the word "ITALIANO" is printed in an arc design below it.

Plaintiff's initial application to the U.S. Patent and Trademark Office for registration of the "Mangia Italiano" service mark was denied.  Plaintiff, however, successfully registered the Mangia Italiano mark with the State of Missouri on August 12, 2011 .

Defendant was organized as a limited liability company under the name Mangia Mobile, LLC and began operating its food truck business in October 2010.  The Mangia Mobile food truck operates primarily during week-day lunch hours, parking at various locations within the central corridor of the City of St. Louis.  However, Mangia Mobile also participates in a monthly food truck event that takes place in Tower Grove Park,

approximately two blocks away from Mangia Italiano. In promoting its new business, defendant has developed a website, a Facebook® page, and a Twitter® account that provide information about Mangia Mobile's route and its menu, and allows users to post questions and comments.

The defendant's food truck is red and bears a silhouette image of the St. Louis Arch and downtown skyline. The word "EAT" appears in a string across the top of the truck. The word "MANGIA" is printed in large letters on the side of the truck. The defendant's logo is circular in shape, with the words "MANGIA" and "MOBILE" forming the circumference in white lettering. In the middle of the circle is a stylized handlebar mustache.

Plaintiff states that it became aware of defendant's food truck operation in November 2010. Plaintiff claims that defendant's use of the Mangia Mobile name immediately began causing confusion and that customers and vendors continue to mistakenly associate defendant's food truck with plaintiff's restaurant. To illustrate this, plaintiff points to an article about recent changes in several St. Louis restaurants that appeared in "Alive" magazine in March 2011. Among the changes noted in the article was Mangia Mobile, described as a food truck "recently launched" by "South Grand fave Mangia Italiano." The article referred readers to the Mangia Mobile Twitter® address for information about where the truck is parked.[4] A local food blogger also wrote that she had "mistakenly assumed that MangiaMobile (sic) was associated with Mangia Italiano on Grand. It isn't." Plaintiff has submitted declarations from its owners, as well as from customers and employees, citing instances in which

---

[4]"Alive" magazine has since issued a retraction of the article.

they encountered individuals who mistakenly believe there is a connection between plaintiff's restaurant and defendant's food truck.  One of the declarants, a server at Mangia Italiano, states that she, too, believed that Mangia Mobile was a food truck operated by Mangia Italiano.  The incidents of mistaken identity are understandable, as it is not unusual for a traditional restaurant to use a shortened version of its name for its food truck.  On August 12, 2011, one of plaintiff's owners conducted a Google search for "Mangia Mobile St. Louis."  The first entry that appeared on the results screen was Mangia Italiano.  Plaintiff has also submitted printouts of comments posted on defendant's Facebook® page indicating that customers mistakenly associate the two eateries.  In addition, plaintiff has discovered unfavorable reviews of defendant's food by customers who mistakenly believe plaintiff is the operator of the food truck.  Finally, in response to a question posted on defendant's website asking if defendant serves any of plaintiff's menu items, defendant replied obliquely that "we are not affiliated with any brick and mortar restaurant : )."

Despite both parties' utilization of the Internet and online social media[5] in promoting their products, defendant denies having any knowledge of the Mangia Italiano restaurant or pasta brand when it began operations under the Mangia Mobile name in October of 2010.  On March 16, 2011, plaintiff's counsel sent a letter to defendant's owners, describing the confusion and damage to plaintiff's business reputation caused by their use of the Mangia Mobile name and demanding that defendant immediately cease using the name and any other designation containing the word "Mangia."  On April 20, 2011, defendant's counsel replied, rejecting any claims

---

[5]Plaintiff also has its own website and Twitter® account.

that it was infringing on plaintiff's Mangia Italiano mark.  Counsel also noted that the Mangia Mobile owners "had nothing to lose" in the event of litigation and predicted that litigation might prove to be "interesting public fodder" and would likely "exceed the lifetime" of the owners' interest in the food truck business.

As it offered to do in the April 20 letter, defendant drafted a disclaimer which it placed on the window of its food truck.  The disclaimer, written on what appears to be an 8½"x11" piece of paper states: "Mangia Mobile is not affiliated with any brick and mortar restaurant."  This disclaimer is either absent from or is not prominent on any of the defendant's Internet pages.  The defendant has not published a disclaimer that specifically states that it is not affiliated with Mangia Italiano.  At one point, defendant suggested changing the food truck's name to "Catherine's Mangia Mobile," but the suggestion was not carried out.

After the lawsuit was filed, the defendant, through its counsel, issued a press release suggesting that the parties engage in a "ravioli smackdown," which the defendant characterized as a form of "alternative dispute resolution."  The defendant's response to the motion for a temporary injunction is sprinkled with Italian phrases, quotations from the movie "Casablanca," and several attempts at humor. In the response, the defendant suggests that the levity it has sought to inject into this litigation is part of its marketing strategy.

## II.  Legal Standard

In deciding whether or not to issue a preliminary injunction, the Court must consider the following factors: (1) the probability that the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between the harm to the movant and the injury that an injunction may cause to other parties; and

(4) the public interest. <u>Dataphase Systems, Inc. v. C L Systems, Inc.</u>, 640 F.2d 109, 114 (8th Cir. 1981). "In balancing the equities, no single factor is determinative." <u>Id.</u> The plaintiff bears the burden of proving its entitlement to injunctive relief. <u>Watkins Inc. v. Lewis</u>, 346 F.3d 841, 844 (8th Cir. 2003).

### III.  Discussion

#### A.  Likelihood of Success on the Merits

##### 1.  Missouri Anti-Dilution Statute

In the amended complaint, plaintiff asserts a claim based on Mo.Rev.Stat. § 417.061.1, which provides:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under sections 417.005 to 417.066, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence or competition between the parties or the absence of confusion as to the source of goods or services.

Thus, to prevail on its state law claims plaintiff is required to prove (1) that its mark was valid at common law, (2) that its mark is distinctive, and (3) that defendant's use of its name creates a likelihood of dilution of the distinctive quality of plaintiff's mark. <u>Gilbert/Robinson, Inc. v. Carrie Beverage–Missouri, Inc.</u>, 758 F.Supp. 512, 527 (E.D.Mo. 1991) . Although plaintiff has presented evidence of confusion, such is not necessary to maintain a claim under the Missouri statute. When likelihood of injury to business reputation or dilution is shown, the statute provides for automatic injunctive relief.

"Missouri law 'is well settled that the same facts which support a suit for trademark infringement support a suit for unfair competition' and common law infringement." <u>Community of Christ Copyright Corp. v. Devon Park Restoration Branch</u>

of Jesus Christ, 634 F.3d 1005, 1010 (8th Cir. 2011) (quoting Gilbert/Robinson, 758 at 527).  See also Steak n Shake Co. v. Burger King Corp., 323 F.Supp.2d 983, 991 (E.D.Mo.2004) ("elements of [Missouri state law] claims substantially overlap with the federal trademark and false designation of origin claims."). The same conclusions that would support a claim under the Lanham Act are sufficient to satisfy the elements of plaintiff's state law claims.[6]  Id.

Here, the plaintiff has established the registration of its Mangia Italiano mark in Missouri.  While evidence of confusion is not required by the Missouri statute, it is nonetheless relevant in this case.  The evidence that members of the public have mistakenly believed that plaintiff's and defendant's establishments are related and have voiced dissatisfaction with the quality of defendant's food supports a finding that use of the Mangia Mobile name presents a likelihood of injury to plaintiff's reputation as an acclaimed Italian restaurant.  Further, as discussed below, the Court finds that plaintiff has shown a likelihood of success on the merits of its Lanham Act claim.  Thus, plaintiff has shown a likelihood of success on the merits of its state law claim.

 2. Lanham Act

The plaintiff also asserts a claim of trademark infringement based on the Lanham Act, 15 U.S.C. § 1125(a).  "The Lanham Act prohibits the use of a mark in connection with goods or services in a manner that is likely to cause confusion as to the source of sponsorship of the goods or services." Davis v. Walt Disney Co., 430

---

[6]The parties dispute whether plaintiff has adequately pled a claim for mark dilution under MO. REV. STAT. § 417.061(1).  Cf. Sensient Technologies Corp. v. SensoryEffects Flavor Co., 636 F.Supp.2d 891 (E.D. Mo. 2009).  Because plaintiff has established the likelihood of success on its Lanham Act claim, the Court need not address its dilution claim here.

F.3d 901, 903 (8th Cir.2005).   To prevail on its claim under the Lanham Act, plaintiff must establish a protectible interest in the Mangia Italiano mark and the likelihood of confusion between plaintiff's and defendant's marks.  Id.

      a.      Protectible Interest

Because plaintiff's application to register its Mangia Italiano mark has been denied by the U.S. Patent and Trademark Office, "there is no presumption of validity, and [plaintiff] bears the burden of establishing that the mark is protectible" under federal law.  Schwan's IP, LLC v. Kraft Pizza Co., 460 F.3d 971 (8th Cir. 2006) (citing Frosty Treats, Inc. v. Sony Computer Entm't Am., Inc., 426 F.3d 1001, 1003 (8th Cir.2005)). "To determine whether a mark is distinctive and thus entitled to trademark protection, [courts] must first categorize it as generic, descriptive, suggestive, or arbitrary." Id. at 974.  While "[g]eneric and descriptive marks are generally not protectible," suggestive and arbitrary marks are "inherently distinctive and protectible" Id.  A generic term "refers to the common name or nature of the article [or service]" and "does not identify the source of a product, but rather indicates the basic nature of the product." Id.  Generic terms "can never function as a trademark." Id.  Similarly, a descriptive term "describes all goods of a similar nature," such as "ingredients, characteristics, qualities, or other features of the product."  A descriptive term "may be used as a trademark only if it has acquired a secondary meaning." Id.

The term Mangia Italiano is neither generic nor descriptive.  Under the Mangia Italiano mark, plaintiff provides a food service, a full-service bar, and a venue for live entertainment.  It also sells non-prepared pasta products under this mark.  While the "Italiano" portion of the mark may signal that the plaintiff's food service or its products are Italian in origin, the word "Mangia" is not of such obvious or common use within

the English language as to describe a characteristic of or be a commonly-used term for any of plaintiff's services or products. Even if plaintiff's mark could be considered descriptive, plaintiff has established that it has acquired secondary meaning within the St. Louis market based upon length of exclusive use and evidence of actual confusion discussed below. Based upon the classification of Mangia Italiano as either suggestive or arbitrary and plaintiff's undisputed prior use of the Mangia Italiano mark, the Court concludes that plaintiff has established a substantial likelihood that it has a protectible interest in the Mangia Italiano mark.

### b.    Likelihood of Confusion

To determine whether a likelihood of confusion exists, the Eighth Circuit applies a six-factor test:

> (1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to 'pass off' its goods as those of the trademark owner; (5) incidents of actual confusion; and, (6) the type of product, its cost, and conditions of purchase.

Frosty Treats v. Sony Computer Ent. Am. Inc., 426 F.3d 1001, 1008 (8th Cir.2005). "[N]o one factor controls, and because the inquiry is inherently case-specific, different factors may be entitled to more weight in different cases."  Kemp v. Bumble Bee Seafoods, Inc., 398 F.3d 1049, 1053 (8th Cir.2005) (citing SquirtCo. v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980)).

*Strength of the mark*

A mark's strength is determined by its distinctiveness. "A distinctive trademark is one that is capable of identifying the source of goods because it is either inherently distinctive or, if not inherently distinctive, has acquired distinctiveness by acquiring

secondary meaning." Aromatique, Inc. v. Gold Seal, Inc., 28 F.3d 863, 869 (8th Cir.1994). Further, "[r]egistered trademarks … are presumed to be distinctive and nonfunctional." Id. at 869.  The strength of a mark is made of both conceptual strength and commercial strength in the marketplace. George & Co. v. Imagination Entm't Ltd., 575 F.3d 383, 393 (4th Cir. 2009); ConAgra, Inc. v. George A. Hormel & Co., 784 F.Supp. 700, 708 (D.Neb.1992), aff'd, 990 F.2d 368 (8th Cir.1993); 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11:83 (4th ed.2010). The rationale of analyzing both categories of strength is that "even a 'weak' mark is entitled to protection against subsequent registration or use by another for a closely similar format on closely competitive goods or services." ConAgra, 784 F.Supp. at 707.

The Mangia Italiano tradename and mark have been used continuously and exclusively at the restaurant's present location in St. Louis since 1983.  Indeed, until the arrival of Mangia Mobile in late 2010, plaintiff's was the only St. Louis area restaurant that contained the word "Mangia." The evidence shows that a great deal of time and money has been expended in marketing the Mangia Italiano restaurant and pasta products.  Mangia Italiano has become well-known throughout the St. Louis area because of its cuisine and its involvement in community activities and because of the favorable media coverage it has garnered.   As a result, the Mangia Italiano mark is strong.

*Similarity between marks*

In analyzing the similarities between two marks, "a court must look to the overall impression created by the marks and not merely compare individual features." General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 627 (8th Cir. 1987).  "Where products are closely related, less similarity in trademarks is necessary to support a finding of

infringement." SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980).

The Court finds that there is a significant similarity between the Mangia Italiano and Mangia Mobile logos. Both have lettering in an arc pattern and both use colors and symbols in a manner designed to evoke an Italian theme. Further, by virtue of the placement of "Mangia" at the top of each logo a viewer's attention would be immediately drawn to that word. Because the focus is on the word "Mangia," it is not surprising that consumers would mistakenly believe that the food truck and the restaurant were related.

### *Competitive proximity*

Both Mangia Italiano and Mangia Mobile promote themselves as Italian restaurants, selling food that they described as "homemade," "prepared from scratch," and "fresh." They both "are targeting the same customers with very similar goods," within the City of St. Louis and sometimes in very close proximity to each other. Bebe Stores, Inc. v. The May Department Stores International, Inc., 230 F.Supp.2d 980, 993 (E.D.Mo. 2002). The Court finds that this factor weighs in plaintiff's favor.

### *Intent to confuse*

The fourth factor analyzed is "whether the alleged infringer intended to pass off its goods as the trademark owner's goods." Sensient Technologies Corp. v. SensoryEffects Flavor Co., 613 F.3d 754, 766 (8th Cir. 2010). The plaintiff is not required to prove bad intent, but "the absence of such intent is a factor to be considered." Frosty Treats, 426 F.3d at 1008. "Knowledge of another's product and an intent to compete with that product is not … equivalent to an intent by a new entrant to a market to mislead and to cause consumer confusion." General Mills, 824 F.2d at 627.

As discussed above, Mangia Italiano has been in business since 1983 and has become renown in the St. Louis community. Until defendant's arrival in 2010, there had been no other restaurant (whether brick-and-mortar or mobile) with "Mangia" as part of its name. Nevertheless, defendant maintains that it never heard of Mangia Italiano before it started it food truck business. The defendant clearly became aware of plaintiff's Mangia Italiano mark when it received the March 16, 2011 cease-and-desist letter. By that time, the Mangia Mobile had been in business for approximately five months. Of course, if the defendant believed it was not infringing on plaintiff's mark it was not required to capitulate to plaintiff's demands. Nevertheless, the defendant's public pronouncements after becoming aware of the possibility of confusion seemed designed not to minimize it, but to capitalize on it as part of its marketing strategy. It is not unreasonable to draw an inference of intent to infringe under these circumstances.

*Actual confusion*

"Proof of actual confusion is relevant to an ultimate finding of likelihood of confusion." Bebe, 230 F.Supp.2d at 994 (citing General Mills, 824 F.2d at 628). The "number and extent of instances of actual confusion" are to be given weight in determining whether there is a likelihood of confusion. Duluth News-Tribune, A Division of Northwest Publications, Inc. v. Mesabi Publishing Co., 84 F.3d 1093, 1098 (8th Cir. 1996).

Here, plaintiff has presented evidence of actual confusion on the part of its customers and vendors. Plaintiff further established that even people who would be expected to know better—*i.e.*, restaurant reviewers and plaintiff's employees—have been confused by the similarity between plaintiff's and defendant's businesses.

Moreover, the reasonableness of the confusion is apparent, given the fact that Mangia Italiano and Mangia Mobile are essentially in the same business and compete for the same customers in the same area. With the proliferation of food trucks in the food service industry, a customer could reasonably believe that Mangia Italiano had followed the path taken by other brick-and-mortar restaurants.

### *Type of product, cost, and conditions of purchase*

The final likelihood-of-confusion factor examines the conditions of purchase and the degree of care expected of customers. Sensient Technologies Corp. v. SensoryEffects Flavor Co., 613 F.3d 754, 769 (8th Cir. 2010). In considering this factor, a court must stand in the shoes of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such a purchaser would usually give in buying the type of goods at issue. Luingino's, Inc. v. Stouffer Corp., 170 F.3d 827, 831 (8th Cir. 1999). The weight given this factor is "more important in confusion-of-source cases where the degree of care that the purchaser exercises in purchasing a product can eliminate the confusion that might otherwise exist." Frosty Treats, 426 F.3d at 1010. To evaluate consumer confusion, the court must not attempt to determine what it would do, but "what a reasonable purchaser in market conditions would do." Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc., 815 F.2d 500, 505 (8th Cir.1987).

Plaintiff has shown that customers believe that the food served by the Mangia Mobile comes from Mangia Italiano because of the similarity of the marks and the cuisine. This belief is reinforced by the expansion of traditional restaurants into the food truck business. The Court finds that the sixth factor weighs in favor of plaintiff.

The plaintiff has shown that it has a protectible interest in its Mangia Italiano mark and that there exists a likelihood of confusion between its mark and defendant's mark.  Thus, plaintiff has met its burden of establishing a likelihood of success on the merits of its Lanham Act claim.

### B.  Threat of Irreparable Harm

Because trademarks represent "intangible assets such as reputation and goodwill, a showing of irreparable injury can be satisfied if it appears that [the party seeking injunctive relief] can demonstrate a likelihood of consumer confusion." General Mills, 824 F.2d at 625.  In a trademark infringement case, there is a presumption of a threat of irreparable harm when the party seeking injunctive relief establishes a likelihood of success on the merits.  See, *e.g.,* United Indus. Corp. V. Clorox Co., 140 F.3d 1175, 1183 (8th Cir. 1998).

Even if the presumption did not apply, the existence of irreparable harm has been established in this case.  After almost 30 years in business, Mangia Italiano has achieved a reputation in the St. Louis area for fresh and high quality Italian food.  Its mark and goodwill were substantial factors in the sale price when plaintiff purchased the restaurant.  The customer confusion resulting from the use of the Mobile Mangia name impacts Mangia Italiano's reputation and detracts from the goodwill it has achieved.  These harms "cannot be corrected by money damages paid after the fact." Bebe Stores, 230 F.Supp.2d at 995.

### C.    Relative Harm to the Parties

In assessing this factor, the Court considers the fact that defendant's food truck has been in operation for less than one year as compared to the 28 years that plaintiff has been in business.   Both parties have made investments in their businesses.

Although the parties did not specifically address this point, it is probably safe to assume that the operating expenses of a mobile food truck with a limited menu and limited times of operation are far less than those of a fixed-location restaurant that is open daily, has a full menu, and employs 40 people.  Perhaps of greater significance is the fact that defendant has stated that it has "nothing to lose" by this litigation, which indicates that defendant places little value on the Mangia Mobile name.  The defendant's prediction that this lawsuit may last longer than its operation of the food truck is a further indication of the value defendant places on its business.  The Court finds that the balance of hardships weighs in favor of plaintiff.

    D.    **Public Interest Concerns**

"The public interest weighs in favor of protecting intellectual property and protecting consumers from fraud in all forms." Nokota Horse Conservancy, Inc. v. Bernhardt, 666 F.Supp.2d 1073, 1081 (D.N.D.2009) (quoting Northwest Airlines, Inc. v. Bauer, 467 F.Supp.2d 957, 964 (D.N.D.2006)).  See also Bebe Stores, 230 F.Supp.2d at 996 ("[T]he public interest favors the protection of holders of valid trademarks against misuse by competitors.").  Here, defendant has taken advantage of the reputation and goodwill plaintiff has acquired during its 28 years in business. Defendant's public statements and cavalier attitude suggest that its motive for doing so was either to make a fast buck or for publicity or both—all at defendant's expense.  Allowing defendant to continue its conduct would not be in the public interest.

### IV. Conclusion

For the reasons set forth above, the Court concludes that plaintiff is entitled to preliminary injunctive relief.  Because the parties did not previously address the issue of security for the injunction, a hearing will be scheduled to give them the opportunity

to do so.

Accordingly,

**IT IS HEREBY ORDERED** that motion of plaintiff Evantigroup, LLC for a preliminary injunction [Doc. #6] is **granted**.

**IT IS FURTHER ORDERED** that a hearing to determine the amount of security to be given by the plaintiff is scheduled for **Tuesday, September 20, 2011, at 8:30 a.m.**

```
                              _____
                              CAROL E. JACKSON
                              UNITED STATES DISTRICT JUDGE
```

Dated this 19th day of September, 2011.